UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TIMOTHY D. GEE,                                )
                                               )
                     Plaintiff,                )
                                               )
        v.                                     )   CASE NO. 1:08-cv-0097-DFH-JMS
                                               )
METALDYNE CORPORATION and                      )
METALDYNE NC-M CHASSIS                          )
SYSTEMS LLC,                                    )
                                               )
                     Defendants.               )


ENTRY ON DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL OR PARTIAL SUMMARY JUDGMENT


Plaintiff Timothy Gee has sued defendants Metaldyne Corporation and
Metaldyne NC-M Chassis Systems LLC (collectively, "Metaldyne") for race
discrimination in decisions not to promote him.  He asserts his claims under Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, as well as the current
version of the Civil Rights Act of 1866, codified as 42 U.S.C. § 1981.  Metaldyne
has moved for partial dismissal of Gee's claims under Rule 12(b)(6) or for partial
summary judgment under Rule 56.  Metaldyne argues that Gee's claims relating
to an August 2005 promotion and a November 2005 promotion should not go
forward under Title VII because Gee failed to exhaust his administrative remedies,
and that the same claims fail under § 1981 because the statute of limitations bars
his claims.  For the reasons set forth below, the portion of Metaldyne's motion
related to Title VII is treated as a motion to dismiss under Rule 12(b)(6) and is

granted.   The portion of Metaldyne's motion related to § 1981 is treated as a motion for summary judgment and is denied without prejudice to renewal after plaintiff has an opportunity to conduct discovery on issues critical to the statute of limitations defense.   Metaldyne's request for oral argument is denied.   The parties' briefs frame the issues well.

I.      *The Available Record for Defendants' Motion*

The court's consideration of a Rule 12(b)(6) motion to dismiss is limited to the pleadings, which consist generally of the complaint and any exhibits or documents attached to or referenced in the complaint.  See Fed. R. Civ. P. 10(c) (a copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all purposes); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993) (court may consider documents referenced in complaint that are central to case, even if plaintiff did not attach copies to complaint).  If matters outside the pleadings are presented and not excluded by the court, the Rule 12(b)(6) motion to dismiss must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

Gee's EEOC charge is referenced in his complaint and is central to his Title VII race discrimination claims, and Gee has not objected to the court's consideration of his charge in deciding Metaldyne's motion to dismiss.   See *Strategic Management Harmony, LLC v. Enhanced Business Reporting Consortium,*

*Inc.*, 2007 WL 2316484, at *9 (S.D. Ind. Aug. 10, 2007); *Marshall v. La-Z-Boy, Inc.*, 2007 WL 3232188, at *2 (N.D. Ind. Oct. 30, 2007) (collecting cases in which courts considered EEOC charges that were attached to defendant's motion to dismiss); *Perkins v. Univ. of Illinois at Chicago*, 1995 WL 680758, at *3 (N.D. Ill. Nov. 14, 1995) (same).  Metaldyne moves to dismiss Gee's Title VII race discrimination claims that are based on his August and November 2005 non-promotions on failure to exhaust grounds.  This issue may be resolved on a Rule 12(b)(6) motion to dismiss because the court need not consider any documents or exhibits outside of the pleadings and Gee's EEOC charge.

Metaldyne also submits an affidavit prepared by Norman Birtch in support of its statute of limitations defense to Gee's § 1981 claims based on his August and November 2005 non-promotions .  Def. Br. Ex. B.  As explained in greater detail below, Metaldyne filed Birtch's affidavit to establish facts to support its argument that the promotions Gee sought in late 2005 would have amounted to "new and distinct relationships" for purposes of § 1981, so that Indiana's two-year statute of limitations would apply to bar those claims.  Metaldyne's affidavit falls well outside the pleadings, is not central to the complaint, and cannot be considered on a motion to dismiss.  Thus, the court must convert Metaldyne's Rule 12 motion to partially dismiss Gee's § 1981 failure to promote claims into a motion for partial summary judgment under Rule 56.

II.     *Motion to Dismiss 2005 Title VII Failure to Promote Claims*

A.   *Motion to Dismiss Standard*

In ruling on a motion to dismiss under Rule 12(b)(6) for failing to state a claim upon which relief can be granted, the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in the light most favorable to the plaintiff.  See *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005).   A formulaic recitation of the elements of the cause of action is not enough to survive a motion to dismiss under Rule 12(b)(6), however.   See *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, —, 127 S.Ct. 1955, 1964-65 (2007).  A plaintiff must "raise a right to relief above the speculative level" by pleading "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1965, 1974.  Dismissal is warranted if the factual allegations, seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  *Id.* at 1968-69.

B.   *Exhaustion of Administrative Remedies*

Title VII requires a plaintiff to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission or the appropriate state or local agency before the plaintiff may proceed to court.  See 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); *Dandy v. United Parcel Service*, 388 F.3d 263, 270 (7th Cir. 2004).  The charge filed with the agency will limit the claims the plaintiff later may pursue in litigation because the court may hear only claims that were included in the EEOC charge or that are "reasonably related" to the allegations of

the charge.  See *Doe v. Oberweis Dairy*, 456 F.3d 704, 708-09 (7th Cir. 2006);

*Dandy,* 388 F.3d at 270.  In other words, the claims brought to court must be

"within the scope" of the EEOC charge, for "an aggrieved employee may not

complain to the EEOC of only certain instances of discrimination, and then seek

judicial relief for different instances of discrimination." *Conner v. Illinois Dep't. of*

*Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005), quoting *Rush v. McDonald's*

*Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).  At a minimum, the complaint filed

in the district court and the charge filed with the EEOC must describe the same

circumstances and participants so that the EEOC may have the opportunity to

investigate the allegedly discriminatory conduct and to seek voluntary compliance

or conciliation without a lawsuit.  *Conner*, 413 F.3d at 680, citing *Cheek v.*

*Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996); *Babrocky v. Jewel Food*

*Co.*, 773 F.2d 857, 864-66 (7th Cir. 1985).  In this case, the court may not reach

the merits of Gee's Title VII failure to promote claims based on promotions that

happened in August 2005 and November 2005 because the pleadings show that

Gee failed to exhaust his administrative remedies with regard to those promotions.

Gee alleges that Metaldyne discriminated against him by denying him

promotions in August 2005, November 2005, and January 2006.  He filed a

charge with the EEOC complaining about the January 2006 promotions but did

not mention the August or November 2005 promotions.

Employment decisions such as terminations, failures to promote, denials of transfer, or refusals to hire are each discrete acts that occur when the discriminatory decision is made, and they are actionable only if the victim files a timely charge with the EEOC.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  Where a plaintiff has not claimed to have worked in an illegally hostile environment, the *Morgan* Court enforced the rule that discrete discriminatory acts are not actionable if time-barred, even when they are related to timely charges.  *Id.* at 113.

Gee argues that the court should hear his Title VII claims of failure to promote based on the August and November 2005 promotions because those promotions were "like or reasonably related" to the promotions he did raise in his EEOC charge – the January 2006 promotions.  Pl. Br. 3, citing *Farrell v. Butler University*, 421 F.3d 609, 616 (7th Cir. 2005); see also *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497 (7th Cir. 1994).  This test is satisfied if there is "a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge."  *Cheek*, 31 F.3d at 500.  Here, Gee argues that the January 2006 promotions and the August and November 2005 promotions involve the same conduct (failure to promote) and the same individuals (Metaldyne management), and thus the "reasonably related" test is satisfied.  Pl. Br. 5-6.

Gee relies on *Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1196 (7th Cir. 1992), in which the plaintiff filed an EEOC charge that alleged race discrimination and failure to promote under Title VII based on events occurring at his former employer's East St. Louis office. Pl. Br. 4, 6. When Taylor's Title VII claim was tried to the court in a bench trial, the court relied on discriminatory acts in the employer's Peoria office as background in concluding that Taylor had been constructively discharged. *Id.* at 1196.[1] Gee's reliance on *Taylor* is misplaced, however, for in *Taylor*, the court relied on the Peoria events as background only, and did not consider those events as separate allegations of discrimination. The reviewing court wrote:

> We agree with the district court that [plaintiff] could properly offer evidence concerning events not included in the EEOC charge . . . *as background evidence* in order to meet his burden of proving that he was reasonable in concluding that he was compelled to resign. The discrimination that occurred in Peoria is sufficiently "like or reasonably related to" the discrimination in East St. Louis to be introduced for this purpose. *We do not intend by this holding to suggest that the Peoria events were sufficiently related to the East St. Louis events to allow [plaintiff] to have brought suit and sought relief on separate discrimination charges for the events in Peoria.*

*Taylor*, 966 F.2d at 1196 (emphasis added).[2]

_____

[1]Gee asserts that Taylor separately pled the Peoria events in his complaint. Pl. Br. 4. This assertion is incorrect and invites the reader toward the faulty assumption that the *Taylor* court permitted the plaintiff to bring separate allegations of discrimination based on the Peoria events. The plaintiff was permitted to include evidence of those events only as background for his East St. Louis-based claims of discrimination.

[2]This holding was consistent with the Supreme Court's later ruling in *Morgan*, which acknowledged that events outside the 300-day time limit may constitute relevant background evidence, but only in cases where the status of a

(continued...)

More apposite to Gee's case is the Seventh Circuit's decision in *Geldon v. South Milwaukee School Dist.*, 414 F.3d 817, 819-21 (7th Cir. 2005). Geldon was passed over for an assistant painter/relief custodian position and a long-term substitute custodian position. She filed a charge with the EEOC alleging sex discrimination, but charged only that she had been passed over for the assistant painter/relief custodian job. *Id.*, 414 F.3d at 818. She filed a second charge with the EEOC when she was not interviewed for a second-shift custodian position, alleging sex discrimination and retaliation. *Id.* The district court found that Geldon had not exhausted her administrative remedies before filing her complaint on the claim related to the substitute custodian position, and the Seventh Circuit affirmed. *Id.* at 818-19. Although the case was "close" because an EEOC investigation of Geldon's complaint about the assistant painter/relief custodian position might have turned up the fact that she was also interested in the substitute custodian position, summary judgment was appropriate because Geldon's initial charge did not put the defendant or the EEOC on notice that she was also complaining about the substitute custodian position. *Id.* at 820. Because she had gone into great detail in describing the circumstances of her application for the assistant painter/relief custodian position, but nothing in her charge hinted at the substitute custodian position, "someone looking at the charge who knew that she had also sought the substitute custodian position likely would

---

[2](...continued)
current practice is at issue or in cases where a timely violation exists, not in cases where the only connecting thread is continuity of employment. 536 U.S. at 112-13.

have inferred that Geldon did not mention the substitute custodian position because she did not think the decision not to hire her for that position was motivated by her gender." *Id.,* 414 F.3d at 820.

Here, the promotions at issue were for different positions and qualify as discrete acts under *Morgan*.  And, as in *Geldon*, Gee's charge that he was not promoted in January 2006 was not sufficient to put Metaldyne and the EEOC on notice that he was also complaining that he had been passed over for promotions in August and November 2005.  Gee's assertion that his allegations involve the same conduct because all are non-promotions and all involve Metaldyne management are not sufficient to relieve him of the requirement to file a timely charge with the EEOC.  Metaldyne's motion to dismiss Gee's Title VII claims based on his August and November 2005 non-promotions is granted, though this decision does not bar Gee from offering evidence of those events as part of the background for the January 2006 events.

III.   *Motion for Partial Summary Judgment on § 1981 Claims Based on 2005 Non-Promotions*

Metaldyne also moves to dismiss Gee's § 1981 race discrimination claims based on his August and November 2005 non-promotions on statute of limitations grounds.  As explained above, this portion of Metaldyne's motion must be treated as one for summary judgment under Rule 56.

The question is whether a two-year or a four-year statute of limitations applies to Gee's § 1981 failure to promote claims.  On the surface, this appears to be a simple question.  In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004), the Supreme Court held that causes of action arising under the 1991 amendment to § 1981 are governed by the four-year federal catchall statute of limitations set forth in 28 U.S.C. § 1658, which was enacted in 1990 to apply to new federal statutes creating new causes of action.  *Id.*, 541 U.S. at 382.  The problem is that the *Jones* ruling does not apply to *all* § 1981 claims.  The *Jones* Court also held that "preexisting" § 1981 causes of action are governed by the "borrowed" limitations period (which, in Indiana, is two years under Ind. Code § 34-11-2-4(1)).  *Id.*

Since *Jones*, the Seventh Circuit has generally applied the four-year federal statute of limitations to § 1981 claims, *e.g.*, *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 735-36 (7th Cir. 2006) (noting generally that *Jones* held that § 1981 claims are subject to a four-year statute of limitations), but has not had to decide

whether a particular § 1981 claim is "preexisting" and thus, under *Jones*, would not be captured by the federal catchall four-year statute of limitations.  The court recognized the distinction between pre- and post-1991 § 1981 claims but left the question open in *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 269 n.4 (7th Cir. 2004) ("Under *Jones*, it would seem that pre-*Patterson* § 1981 claims which involve the making or enforcement of contracts as opposed to claims centered on 'harassing conduct that occurred after the formation of the contract' would be subject to the analogous state personal rights statute of limitations as they did not 'arise under' the 1991 Civil Rights Act.").  Under *Jones*, the issue is whether Gee's claims arose under the post-1990 amendment to § 1981 or whether they were preexisting.  A bit of background is necessary to understand this issue.

The original version of § 1981 was enacted in 1866, amended in minor respects in 1870, and recodified in 1874, but its basic coverage did not change prior to 1991.  As first enacted, § 1981 provided that "all persons [living within the jurisdiction of the United States] shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  In 1989, the Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 179 (1989), and held that the statutory right "to make and enforce contracts" under § 1981 did not protect against harassing conduct that occurred after the contract was formed.  Because Patterson's claims of workplace harassment arose after the formation of the employment contract, they were not protected under the original version of § 1981 and were not actionable.  491 U.S. at 179.  However, the *Patterson* Court

held the plaintiff's claim for failure to promote would be actionable under § 1981 if the promotion in question offered an opportunity for a "new and distinct relation" between the employee and the employer. *Id.* at 185.  In spite of the 1991 statutory amendment to reverse the primary holding of *Patterson*, this latter holding relating to failure-to-promote claims controls the statute of limitations applicable to Gee's claims in this case.

With the Civil Rights Act of 1991, Congress responded to *Patterson* by adding language to § 1981 defining the phrase "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  In so doing, Congress brought harassing conduct occurring after the formation of the employment contract under the protections of § 1981.

In the meantime, Congress had recognized and acted to correct a different problem that had unnecessarily complicated federal causes of action for a long time.  Before 1990, Congress had not enacted a uniform federal statute of limitations.  A "void" existed in federal statutory law regarding the statute of limitations applicable to many federal cases. *Jones*, 541 U.S. at 377, citing *Board of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 483 (1980).  Prior to the enactment of 28 U.S.C. § 1658, the "settled practice [was] to adopt a local time limitation as federal law if it [was] not inconsistent with federal law or policy to do so."  *Jones*, 541 U.S. at 377-78, quoting *Wilson v. Garcia*, 471 U.S.

261, 266-67 (1985).   This practice of "limitation borrowing" spawned a vast amount of expensive and sterile litigation with a host of issues that required resolution on a statute-by-statute and forum-by-forum basis.   See *Jones*, 541 U.S. at 377-79.   In 1990 Congress partially addressed this problem by enacting 28 U.S.C. § 1658, a uniform four-year statute of limitations to govern federal civil actions "arising under an Act of Congress enacted after the date of the enactment of this section."   28 U.S.C. § 1658(a).

This brings us back to *Jones*.   In *Jones*, the question addressed by the Court was whether claims based on § 1981 fell under § 1658's four-year statute of limitations.   Section 1981 had been enacted prior to § 1658's enactment, but had been amended after § 1658's enactment.   It was undisputed that the *Jones* petitioners' § 1981 allegations – hostile work environment, wrongful termination, and denial of transfer – arose under the amended version of the statute.   *Jones*, 541 U.S. at 373.   Finding that an amendment to an existing statute is no less an "Act of Congress" than a new stand-alone statute and that the substantive effect of an enactment is what matters, the Supreme Court held in *Jones* that a cause of action "arises under an Act of Congress enacted" after December 1, 1990 (and is therefore governed by § 1658's four year statute of limitations) if the plaintiff's claim was made possible by a post-1990 enactment.   *Jones*, 541 U.S. at 381-82. However, *Jones* specifically left in place "the 'borrowed' limitations periods for *pre-existing causes of action*, with respect to which the difficult work already has been done."   *Id.* at 382 (emphasis added).

-13-

After *Jones*, § 1981 statute of limitations questions must be answered on a claim-by-claim basis, and failure-to-promote claims can be especially slippery. Some § 1981 failure-to-promote claims will be governed by § 1658's four-year statute of limitations because they are comparable to harassing conduct that occurred after the employment contract had been formed (and thus, under *Patterson*, were not viable under the unamended, pre-1990 version of § 1981). Other § 1981 failure-to-promote cases will be governed by the state's analogous statute of limitations because, under *Patterson*, the promotions at issue would have amounted to a new contract and thus would have been viable even under the unamended version of § 1981.

Because Congress reacted so quickly to *Patterson* by amending § 1981 with the 1991 Civil Rights Act, there are few cases to guide courts in determining whether a particular failure-to-promote claim arose under the post-1990 enactment (and thus, under *Jones*, is governed by § 1658's catchall four-year statute of limitations) or would have been covered by the earlier version of § 1981 and thus is governed by the most analogous statute of limitations of the state. *Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188 (7th Cir. 1992), provides a starting point.  Relying exclusively on *Taylor*, Metaldyne argues that Gee's failure-to-promote claims are "preexisting" and thus should be governed by the shorter statute of limitations, which would bar Gee's August and November 2005 failure-to-promote claims.

Taylor was decided in a period of legal limbo.  The Supreme Court decided Patterson two months after the district court's decision to dismiss Taylor's failure-to-promote claim, and the Seventh Circuit decided that Patterson applied to those pending claims.  Taylor, 966 F.2d at 1199, citing McKnight v. General Motors Corp., 908 F.2d 104, 107-08 (7th Cir. 1990).  Then, after oral argument in Taylor, Congress enacted the Civil Rights Act of 1991 (overturning Patterson), but the Seventh Circuit did not apply the 1991 amendment retroactively.  Id.  In Taylor, then, the Seventh Circuit had to decide, after Patterson but before the 1991 Civil Rights Amendment took effect, whether the plaintiff's failure-to-promote claim was viable under Patterson's "new and distinct relation" test.  At the time, the Seventh Circuit described Taylor as "one of a vanishing breed to which we must apply the Patterson standards."  Id.  At least of the few of the breed still survive, though the question is not whether claims survive on the merits but which statute of limitations applies under Jones.

The question to be resolved in Taylor, like the question here, was whether the plaintiff's failure-to-promote § 1981 claims were viable under the old Patterson test.  For Taylor, the answer to that question would decide whether or not his failure to promote claims were legally cognizable under § 1981.  For Gee, the answer determines not whether he may bring his failure-to-promote claims under § 1981 – under § 1981 as amended there is no doubt that he can – but whether those claims are timely.

The Seventh Circuit wrote in *Taylor* that the "new and distinct relation" standard of *Patterson* is difficult to apply and that the Seventh Circuit had not adopted a bright-line test.  966 F.2d at 1200, citing *Partee v. Metropolitan Sch. Dist.*, 954 F.2d 454, 457 (7th Cir. 1992); *McKnight*, 908 F.2d at 109-10.  The court considered the relevant law of other circuits, including the Third, Fourth, Fifth, Eighth, Ninth, and Eleventh, as "guideposts."  *Taylor*, 966 F.2d at 1200 (collecting cases).  In *Sitgraves v. Allied Signal, Inc.*, 953 F.2d 570, 574 (9th Cir. 1992), the court concluded that a promotion from a non-supervisory position to a supervisory one, or a move from an hourly to a salaried position, would support a failure to promote claim under the original § 1981.  The Eleventh Circuit found that elevation from non-management to management could meet the standard in *Wall v. Trust Co.*, 946 F.2d 805, 808 (11th Cir. 1991).  Meanwhile, the Fifth Circuit, in *Harrison v. Associates Corp.,* 917 F.2d 195, 198 (5th Cir. 1990), concluded that an increase in pay, by itself, would not be enough to support an actionable pre-amendment § 1981 claim.  Rather than adopting one of these tests, the Seventh Circuit noted the emphasis on qualitative rather than quantitative changes and ultimately required further development of the record to determine whether the plaintiff's § 1981 failure to promote was actionable under *Patterson*. *Taylor*, 966 F.2d at 1201.

These considerations factored into a few other Seventh Circuit cases, as well.  In *Jones v. Merchants National Bank & Trust Co.*, 42 F.3d 1054, 1059-60 (7th Cir. 1994), the court found that an accountant had not shown that the promotion

she sought, to bank officer, would have amounted to a new and distinct relation with her employer under *Patterson*, and thus her § 1981 failure-to-promote claim was not viable.  To survive summary judgment, the court wrote, Jones needed "to submit evidence of recent officer promotions which established that pay increases, supervisory responsibilities, and other duties or benefits regularly accompanied the change in status." *Id.* at 1059.  Because she did not, her failure-to-promote claim failed.  *Id.* at 1060; see also *Partee*, 954 F.2d at 457 (affirming that "assumption of supervisory duties, without more, does not create a new and distinct employer-employee relationship," but combination of supervisory duties and other factors – increase in pay, change in union membership – may be sufficient); *Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036, 1054-55 (7th Cir. 1991) (showing that promotions would entail the assumption of some supervisory authority and that job performance would affect the work of more plant workers was insufficient to show a "new and distinct relation" under *Patterson* where promotions sought would not have placed employees in salaried positions, removed them from the bargaining unit, or substantially altered their roles in plant operations).

In *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir. 1989), the Seventh Circuit took a somewhat different tack, articulating an interpretation of *Patterson* that would bar only a narrow class of pre-amendment § 1981 actions. The court suggested that the only promotions that would not qualify as a "new and distinct relationship" would be positions sought by a would-be § 1981 plaintiff

that amounted to a "routine advancement that only existing employees qualify for."  In other words, if an outsider could apply for the position, the failure-to-promote claim would remain viable under the post-*Patterson*, pre-amendment § 1981.  The court explained:

> [The interpretation avoids] the anomaly created by a rule that a stranger to the firm could sue under section 1981 if his application for a position was turned down on racial grounds but a person already employed by the firm could not sue even though his application for the identical position was turned down on the identical grounds.

*Malhotra*, 885 F.2d at 1311; see also *Mozee*, 940 F.2d at 1054-55 (applying *Malhotra* interpretation and noting in support of ultimate determination that a new and distinct relation would not have been created by promotions at issue that the district court did not find that an outsider would have been considered by the company for the jobs).  The concurring opinion in *Malhotra* noted that this "outsider" analysis would not exclude other tests to determine whether a "new and distinct relation" would arise.  *Malhotra*, 885 F.2d at 1317, n. 6 (Cudahy, J., concurring).

The defense has come forward with substantial evidence indicating that the August and November 2005 promotions that Gee sought would have created a new and distinct relationship under *Patterson* and the pre-amendment § 1981. Birtch affirmed that Gee was a member of the bargaining unit of Metaldyne's New Castle facility and that the terms and conditions of his employment were governed by a collective bargaining agreement between Metaldyne and Gee's union.  Birtch

Aff. ¶ 2.  Birtch also affirmed that the supervisor position Gee sought in August 2005 was a supervisory position that was non-union and salaried, and the terms of the position would have been determined by the company, not by the terms of the CBA.  Birtch Aff. ¶ 5.  Similarly, the process engineer position that Gee alleges he sought in November 2005 was also a non-union and salaried position, and the terms of employment would have been determined by Metaldyne, not by the CBA. Birtch Aff. ¶ 7.  Birtch's testimony does not address whether the supervisor position or the process engineer position would have been accompanied by an increase in pay or other employment benefits or whether the positions could have been filled by someone from outside of Metaldyne.  Nevertheless, this evidence suggests that the August and November 2005 promotions that Gee sought would have amounted to new and distinct relationships under *Patterson* so that his claims are pre-existing and outside of § 1658's four-year statute of limitations under *Jones*.

Gee has responded to Metaldyne's motion by arguing that he needs relief under Rule 56(f) and an opportunity to take discovery, at least as to whether the August and November 2005 promotions he sought would have created a "new and distinct relationship."  Dkt. 30.

Rule 56(f) of the Federal Rules of Civil Procedure provides:

If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)    deny the motion;

(2)    order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3)    issue any other just order.

Fed. R. Civ. P. 56(f).  "A party seeking the protection of Rule 56(f) must make a good faith showing that it cannot respond to the movant's affidavits.  The rule requires the filing of an affidavit stating the reasons for a claimant's inability to submit the necessary material to the court."  *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057-58 n.5 (7th Cir. 2000), quoting *United States v. All Assets & Equipment of West Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995).  To justify a delay under Rule 56(f), the party's failure to secure discovery cannot be due to his own lack of diligence.  *Id.*  The party requesting relief pursuant to Rule 56(f) "is under an obligation to bring the issue before the court in an expeditious manner," *id.*, and Gee has done so in this case.

The court agrees with Gee is entitled to an opportunity for discovery pursuant to Rule 56(f).  Gee has met his burden under Rule 56(f) by showing there is a reasonable prospect that he may discover relevant evidence as to the existence of genuine issues of material fact regarding whether the August and November 2005 promotions would have created a "new and distinct relationship" for purposes of the pre-1990 version of § 1981 and *Patterson*, which will determine which statute of limitations  governs his failure to promote claims under § 1981.

-20-

*Conclusion*

Metaldyne's motion to dismiss Gee's Title VII failure to promote claims based on his August and November 2005 non-promotions is granted. Metaldyne's motion for summary judgment on Gee's § 1981 failure to promote claims based on those same non-promotions is denied, though without prejudice to renewal pending further discovery on whether the promotions Gee sought in August and November 2005 would have amounted to a "new and distinct relationship" for purposes of § 1981 and thus are subject to a two year statute of limitations. If plaintiff has not already served the needed discovery, he shall do so no later than 30 days from the issuance of this entry. Finally, Metaldyne's request for oral argument is denied.

So ordered.

Date: November 14, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Andrew Timothy Baran
GIARMARCO, MULLINS & HORTON PC
abaran@gmhlaw.com,hbreight@gmhlaw.com

John H. Haskin
HASKIN LAUTER & LARUE
jhaskin@hlllaw.com

Paul Anthony Logan
HASKIN LAUTER & LARUE
plogan@hlllaw.com